**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| WWEC HOLDINGS III CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-0949-BWD |
| | ) | |
| DAVID HACKMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION RESOLVING MOTION TO DISMISS**

Date Submitted: March 13, 2026
Date Decided: March 25, 2026

Brian R. Lemon and Alberto E. Chávez, AKERMAN LLP, Wilmington, DE; *Attorneys for Plaintiff WWEC Holdings III Corp.*

Elizabeth S. Fenton and Brittany M. Giusini, BARNES & THORNBURG LLP, Wilmington, DE; OF COUNSEL: Daniel W. Van Horn, BUTLER SNOW LLP, Memphis, TN; *Attorneys for Defendant David Hackman*.

**DAVID, V.C.**

This memorandum opinion interprets a forum selection provision in a stock purchase agreement. The plaintiff and the defendant entered into a stock purchase agreement under which the plaintiff purchased all outstanding units in a Mississippi limited liability company for a combination of cash and a possible earnout payment tied to adjusted EBITDA during the earnout period. The agreement included a mechanism under which disputes over EBITDA calculations in the buyer's earnout payment statement would be resolved by an "Arbiter," whose decision would be final and binding "absent fraud or intentional misrepresentation by any Party or manifest error by the Arbiter." The parties engaged an Arbiter, who issued a report. The defendant filed two lawsuits in Mississippi federal court, the first to enforce the Arbiter's report and the second alleging the plaintiff committed fraud.

The stock purchase agreement contains an exclusive forum selection provision requiring the parties to file "[a]ny suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated [t]hereby" in this Court. The agreement also includes a narrow carve-out that permits "any court having jurisdiction over any Party" to "enforce" the Arbiter's award.

In this action, the plaintiff seeks declaratory judgments that (1) the Arbiter exceeded the scope of his authority and committed a manifest error, and (2) the plaintiff did not commit fraud in connection with the stock purchase agreement. The plaintiff also alleges that the defendant breached the forum selection provision in the

1

stock purchase agreement by filing his lawsuits in Mississippi federal court. On the present motion, I conclude that the enforceability of the Arbiter's award is properly before the Mississippi federal court and therefore defer to that first-filed action. By contrast, the Court will not defer to the fraud action because the stock purchase agreement's broad forum selection provision requires that claims for fraud must be brought in this Court.

## I.  BACKGROUND[1]

### A.  The Securities Purchase Agreement

Prior to December 22, 2023, defendant David Hackman owned all of the outstanding shares of North American Electric, Inc., a Mississippi corporation that sold electric motors, motor controls, and gearing. Am. Compl., Ex. 1 [hereinafter SPA] at 1; *id.* § 9.1. On December 22, North American Electric, Inc. underwent a reorganization and was converted to a Mississippi limited liability company, North American Electric, LLC ("NAE" or the "Company"). SPA at 1–2. After the reorganization, Hackman owned all of the outstanding units of the Company through NAE Holdco, Inc. ("Holdco"), a Mississippi corporation. *Id.* at 2.

---

[1] The following facts are taken from Plaintiff's Amended Verified Complaint (the "Amended Complaint") and the documents incorporated by reference therein, unless otherwise noted. Am. Verified Compl. [hereinafter Am. Compl.], Dkt. 16.

On December 29, Hackman and plaintiff WWEC Holdings III Corp. ("WWEC" or "Plaintiff"), a Delaware corporation, entered into a Securities Purchase Agreement (the "SPA") through which WWEC agreed to purchase all of the outstanding units of the Company. *Id.* at 1; *id.* § 1.1. Under the SPA, Hackman was to receive $28.9 million, subject to adjustments, at closing, with the possibility of an earnout payment based on the Company's "Adjusted EBITDA" for the 12-month period ending June 30, 2024 (the "Earnout Period"). *Id.* §§ 1.1–1.5, 9.1; Am. Compl. ¶¶ 10–11.

Section 1.5(e) of the SPA sets out a procedure for determining Adjusted EBITDA during the Earnout Period. Section 1.5(e) provides, in part:

> (i) No later than forty five (45) days after the unaudited consolidated financial statements of the Company and its Subsidiaries for the Earnout Period (the "Earnout Period Financial Statements") are completed, Buyer shall deliver to Seller a statement containing the calculations of (A) Adjusted EBITDA during the Earnout Period, and (B) the Earnout Payments, with reasonable backup for such calculations made therein (the "Earnout Payment Statement").

> (ii) The Earnout Payment Statement shall be prepared by Buyer based upon the Earnout Period Financial Statements and other books and records of Company. If Seller does not submit any written comments to the Earnout Payment Statement within thirty (30) days of receipt thereof, then Seller will be deemed to have approved such Earnout Payment Statement, and such Earnout Payment Statement (and the calculations and amounts contained therein) shall be final and binding on the Parties. If Seller delivers written comments to Buyer regarding the Earnout Payment Statement within such 30-day timeframe, then Buyer and Seller shall use good faith efforts to resolve any dispute in connection with such comments. ***In the event Buyer and Seller are unable to agree*** within 30 days after Seller's delivery of such

3

written comments (or such longer period as Seller and Buyer shall mutually agree), ***Buyer and Seller shall engage the Arbiter[2] to resolve the dispute in accordance with the guidelines and principles set forth in this Agreement***. In resolving any dispute with respect to the Earnout Payment Statement, the Arbiter (A) may not assign a value to any item greater than the highest value claimed for such item or less than the lowest value for such item claimed by either Buyer or Seller, (B) shall restrict its decision to such items included in the objection(s) which are then in dispute, and (C) shall render its decision in writing within thirty (30) calendar days after the disputed item(s) have been submitted to it. ***The resolution of the Earnout Payment Statement disputed items by the Arbiter shall be conclusive and binding*** on the Parties for the purposes of this Agreement ***absent*** fraud or intentional misrepresentation by any Party or ***manifest error by the Arbiter***, and the Parties agree that ***judgment may be entered upon such determination of the Arbiter in any court having jurisdiction over any Party in order to enforce such determination***.

SPA § 1.5(e) (emphasis added); Am. Compl. ¶¶ 14–18.

Separately, Section 8.10 of the SPA includes a Delaware forum selection provision:

> ***Any suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby shall be brought exclusively in the Delaware Court of Chancery*** in New Castle County, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action, the United States District Court for the District of Delaware, and each of the Parties hereto hereby irrevocably submits to the exclusive jurisdiction of such courts for the purpose of any such suit, action or other proceeding. ***A final judgment in any such suit, action or other proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.*** Each Party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising

---

[2] The SPA defines "Arbiter" to mean "an independent financial consulting, valuation or accounting firm." SPA § 1.3(d)(iv).

out of this Agreement or the transactions contemplated hereby in such courts, and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

SPA § 8.10 (emphasis added); Am. Compl. ¶ 19.

## B.    The Earnout Dispute

On August 7, 2024, WWEC sent Hackman an Earnout Payment Statement pursuant to Section 1.5(e)(i) of the SPA.  Am. Compl. ¶ 20; *id.*, Ex. 2 [hereinafter EPS] at 1.  The Earnout Payment Statement contained WWEC's calculation of Adjusted EBITA during the Earnout Period of $3,795,469, supporting an earnout payment of $291,868.  Am. Compl. ¶ 20; EPS at 2.

Section 1.5(e)(ii) of the SPA set a thirty-day deadline for Hackman to deliver written comments on the Earnout Payment Statement, but on August 19, the parties amended the SPA to extend the deadline to submit written comments by an additional sixty days.  Am. Compl. ¶ 21; *see id.*, Ex. 3.

On September 26, Hackman submitted written comments on the Earnout Payment Statement to WWEC (the "Preliminary Objection").  Am. Compl. ¶ 22; *id.*, Ex. 4 [hereinafter Prelim. Obj.].  The Preliminary Objection raised eight objections to WWEC's calculation of Adjusted EBITDA.  Am. Compl. ¶ 22; Prelim. Obj. at 3.

Pertinent to the present dispute, the Preliminary Objection argued that WWEC's calculation of Adjusted EBITDA improperly failed to include revenue

5

from a purchase order under which WESCO Distribution, Inc. ("Wesco") had purchased two multi-motor control panels and one programmable logic controller control panel from the Company (the "Wesco Order"). Am. Compl. ¶ 40. The Preliminary Objection argued that "[t]he Wesco [O]rder should have been invoiced prior to June 30, 2024 or appropriately treated as an add back." *Id.* ¶ 22; Prelim. Obj. at 2. The Preliminary Objection calculated Adjusted EBITDA of $4,329,290, supporting an earnout payment of $3,957,985.64. Am. Compl. ¶ 23; Prelim. Obj. at 3.

On October 25, WWEC responded to the Preliminary Objection, arguing that the Wesco Order was not completed until after the Earnout Period. Am. Compl. ¶ 24; *id.*, Ex. 5 at 1. On November 4, Hackman sent a "Final Objection" to the Earnout Payment Statement, continuing to argue that the Wesco Order should be included in the calculation of Adjusted EBITDA. Am. Compl. ¶ 26; *id.*, Ex. 6.

**C. The Parties Engage The Arbiter And He Renders A Decision.**

Because the parties were unable to resolve the dispute, WWEC and Hackman engaged an Arbiter in accordance with Section 1.5(e)(ii) of the SPA. Am. Compl. ¶ 27; SPA § 1.5(e)(ii).

On April 14, 2025, WWEC and Hackman executed an engagement letter (the "Engagement Letter") with Glenn Pomerantz of BDO USA, P.C. to serve as the Arbiter. Am. Compl. ¶ 35; *id.*, Ex. 7 [hereinafter Engagement Ltr.]. The

6

Engagement Letter stated that BDO would not be responsible for addressing "any legal matters or questions of law." Am. Compl. ¶ 38; Engagement Ltr. at 5.

The Engagement Letter contemplated that WWEC and Hackman would make "Initial Presentations" and "Rebuttal Presentations," after which the Arbiter would deliver an "Info Request" to the parties requesting additional information, to which the parties would respond. Am. Compl. ¶ 36; Engagement Ltr. at 3–4. The Arbiter would then deliver an "Adjustment Report" within thirty days. Am. Compl. ¶ 36; Engagement Ltr. at 4.

On April 29, WWEC and Hackman made Initial Presentations, and on May 6, the parties made Rebuttal Presentations. Am. Compl. ¶ 39; *id.*, Exs. 8–11. On May 20, the Arbiter sent an Info Request to the parties posing questions about the Wesco Order. Am. Compl. ¶ 39; *id.*, Ex. 12. The Arbiter's questions included whether Wesco had a legal obligation "to pay 100% of the order price in the event WESCO canceled the order after the start of production." Am. Compl. ¶ 44; *id.*, Ex. 12 at 2.

The parties responded to the Info Request on June 4. Am. Compl. ¶ 39; *id.*, Exs. 13–14. WWEC responded that Wesco did not have a legal obligation to pay the full order price because the Wesco Order was not canceled. Am. Compl. ¶ 45; *id.*, Ex. 13 at 7–8. Hackman responded that Wesco did have a legal obligation to pay the balance of the order price, citing the Uniform Commercial Code and decisional authority. Am. Compl. ¶ 46; *id.*, Ex. 14 at 4–7.

On July 1,[3] the Arbiter issued his "Adjustment Report."  Am. Compl. ¶ 47.

Regarding the Wesco Order, the Arbiter explained:

> While I agree with Buyer that the standard terms and conditions cited in WESCO's purchase order contradicts the terms and conditions provided in the Company's original proposal, I am persuaded by Seller's UCC and case law analysis.  I find Seller's references to UCC and common case law captures the essence of the WESCO Order #1 in dispute and supports the ASC 606 criteria of an enforceable right.  The evidence also suggests that the panels were complete and that an alternative use did not exist for the panels.

Am. Compl. ¶ 49; *id.*, Ex. 15 at 16–17.  The Adjustment Report increased Adjusted EBITDA by $320,250 to account for the Wesco Order.[4]  Am. Compl. ¶ 52; *id.*, Ex. 15 at 17.

On July 11, WWEC asked the Arbiter to "clarify how [he] reached a finding of full revenue recognition on a $470,000 order if the final payment on that order was actually $378,108.75."  Am. Compl. ¶ 55; *id.*, Ex. 16 at 2–3.  The Arbiter responded that:

> My decision in respect of [the Wesco Order] was made on the basis of the evidence provided to me by the parties.  I have reviewed Buyer's request for a clarification.  I confirm that my report and calculation does not contain a mathematical error or oversight and was based on the information provided to me by the parties.

Am. Compl. ¶ 56; *id.*, Ex. 16 at 1.

---

[3] The Adjustment Report is dated June 27 but was issued on July 1.  Am. Compl. ¶ 47.

[4] The Arbiter ruled in favor of WWEC on all other issues.  Am. Compl. ¶ 51; *id.*, Ex. 15 at 19.

**D.     Hackman Files Suit To Enforce The Arbiter's Report In Mississippi Federal Court.**

On August 4, Hackman filed an action in the United States District Court for the Northern District of Mississippi ("Mississippi Federal Court") seeking to enforce the Adjustment Report (the "Enforcement Action").  Am. Compl. ¶ 58; *id.*, Ex. 17; *Hackman v. WWEC Hldgs. III, Corp.*, C.A. No. 3:25-cv-225-SA-JMV.  On November 17, WWEC moved to dismiss, transfer venue, or stay the Enforcement Action in favor of this action.  Am. Compl. ¶ 59; *Hackman v. WWEC Hldgs. III, Corp.*, C.A. No. 3:25-cv-225-SA-JMV Dkt. 24.

**E.     Hackman Files A Second Lawsuit Alleging Fraud In Mississippi Federal Court.**

On August 21, Hackman filed a second action in Mississippi Federal Court, alleging claims against WWEC for fraud and negligent misrepresentation premised on alleged misstatements concerning how employee raises and certain customer orders would be calculated for purposes of the earnout under the SPA (the "Fraud Action").  Am. Compl. ¶ 62; *id.*, Ex. 20; *Hackman v. WWEC Holdings III, Corp.*, C.A. No. 3:25-cv-246-SA-RP.

**F.     Procedural History**

On August 22, WWEC initiated this action through the filing of a Verified Complaint (the "Initial Complaint").  Verified Compl., Dkt. 1.  On November 13, WWEC filed the operative Amended Complaint.  Am. Compl., Dkt. 16.  The Amended Complaint alleges five counts.

9

Count I seeks a declaratory judgment that the Arbiter exceeded the scope of his authority by "ma[king] an improper legal determination regarding what terms and conditions applied to [the Wesco Order] based on Hackman's incorrect interpretation of the UCC and caselaw." *Id.* ¶¶ 68–72. Count II seeks a declaratory judgment that the Arbiter committed "manifest error" when he "reached a finding of full revenue recognition and corresponding full margin" for the Wesco Order. *Id.* ¶¶ 73–77.

Count III seeks a declaratory judgment that "Hackman has no legally valid or viable fraud claim" against WWEC. *Id.* ¶¶ 78–84. Count IV seeks a declaratory judgment that "Hackman has no legally valid or viable negligent misrepresentation claim" against WWEC. *Id.* ¶¶ 85–91.

Count V alleges a breach of contract claim against Hackman for violating the forum selection provision in Section 8.10 of the SPA. *Id.* ¶¶ 92–102.

Hackman moved to dismiss the Amended Complaint (the "Motion to Dismiss"). Def.'s Mot. to Dismiss Pl.'s Verified Compl., Dkt. 10. On December 12, Hackman filed his opening brief in support of the Motion to Dismiss. Def.'s Opening Br. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. [hereinafter OB], Dkt. 22. On January 12, 2026, WWEC filed its answering brief in opposition to the Motion to Dismiss. Pl.'s Answering Br. in Opp'n to Def's Mot. to Dismiss [hereinafter AB], Dkt. 24. On February 3, Hackman filed his reply brief in further support of the

Motion to Dismiss. Def.'s Reply Br. in Further Supp. of His Mot. to Dismiss [hereinafter RB], Dkt. 27. The Court heard oral argument on the Motion to Dismiss on March 13.

## II. ANALYSIS

Hackman has moved to dismiss under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim upon which relief can be granted. Many of the arguments raised in connection with the Motion to Dismiss turn on interpretation of Sections 8.10 and 1.5(e)(ii) of the SPA, so that is where I begin.

"The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)). "[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause . . . ." *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

As with any contractual provision, when interpreting a forum selection clause, "Delaware courts read the agreement as a whole and enforce the plain meaning of

clear and unambiguous language." *Thompson St. Cap. P'rs IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) (quoting *BitGo Hldgs., Inc. v. Galaxy Digit. Hldgs., Ltd.*, 319 A.3d 310, 322 (Del. 2024)). "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005). "This principle 'can be thought of as reading the specific as an exception to the general, which allows a harmonizing of otherwise conflicting provision[s].'" *Thompson St.*, 340 A.3d at 1166 (quoting *Nucor Coatings Corp. v. Precoat Metals Corp.*, 2023 WL 6368316, at *10 (Del. Super. Aug. 31, 2023)). In short, "general terms of the contract must yield to more specific terms." *Id.* (quoting *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019)).

To summarize the contract provisions quoted in full above: Section 8.10 of the SPA requires that "[a]ny suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby shall be brought exclusively in the Delaware Court of Chancery" and that "each of the Parties hereto hereby irrevocably submits to the exclusive jurisdiction of" this Court "for the purpose of any such suit, action or other proceeding." SPA § 8.10. Section 8.10 then provides a narrow exception to this general forum selection provision: "A final

12

judgment in any such suit, action or other proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law." *Id.*

Section 1.5(e)(ii) then provides an additional carve-out to the general forum selection provision in Section 8.10. It states that if the parties have a dispute over the Earnout Payment Statement, they "shall engage the Arbiter to resolve the dispute in accordance with the guidelines and principles set forth in this Agreement." *Id.* § 1.5(e)(ii). In that case, "[t]he resolution of the Earnout Payment Statement disputed items by the Arbiter shall be conclusive and binding on the Parties for the purposes of this Agreement absent fraud or intentional misrepresentation by any Party or manifest error by the Arbiter." *Id.* After the Arbiter renders a decision, "judgment may be entered upon such determination of the Arbiter in any court having jurisdiction over any Party in order to enforce such determination." *Id.*

### A. Counts I And II Are Dismissed In Favor Of The Enforcement Action.

Counts I and II of the Amended Complaint seek declaratory judgments that the Arbiter exceeded the scope of his authority and committed a manifest error. Am. Compl. ¶¶ 68–77. The SPA provides that the Arbiter's decision "shall be conclusive and binding . . . *absent fraud or intentional misrepresentation by any Party or manifest error by the Arbiter*." SPA § 1.5(e)(ii) (emphasis added). The parties agree that the question of whether the Arbiter has committed manifest error must be

13

decided by a court and not the Arbiter himself. SPA § 1.5(e)(ii).[5] They disagree which court—the Court of Chancery or the Mississippi Federal Court—should make this determination.

Hackman argues that under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970), "considerations of comity and the necessities of an orderly and efficient administration of justice" require that "when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues," the Court should defer to the prior-filed action. *Id.* at 283; *see* OB at 31–32. Hackman filed the Enforcement Action in Mississippi Federal Court on August 4, approximately three weeks before this action was filed on August 22. In the Enforcement Action, Hackman seeks to enforce the Arbiter's award, putting the enforceability of the award directly at issue. Thus, Hackman argues that to the extent Counts I and II seek declarations that the Arbiter exceeded the scope of his authority and committed manifest error, the Court should defer to the first-filed Mississippi Federal Court on enforceability.

---

[5] *See* Draft Tr. at 10:1–5 ("Q. . . . [W]ho determines whether . . . manifest error has occurred? A. The Court reviewing the arbitration."); AB at 18 ("WWEC alleges manifest error by the Arbiter, and thus court review is appropriate.").

WWEC, in response, argues that a lawsuit bringing "a challenge to the Arbiter's actions" falls within the broad forum selection provision in Section 8.10 of the SPA. AB at 29. WWEC contends that "the Arbiter's determination may not be enforced so long as there are pending issues regarding" manifest error by the Arbiter, and that Section 8.10 requires those issues to be resolved in this Court. *Id.* at 28. If WWEC is correct, then the Court cannot defer to the first-filed Enforcement Action because "[w]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent the forum selection clause, the *McWane* principle might otherwise require a different result." *Ingres Corp.*, 8 A.3d at 1145.

In my view, Hackman has the better argument. Although the general forum selection provision in Section 8.10 is broad, it then provides a specific exception permitting "[a] final judgment in any . . . proceeding [to] be *enforced in other jurisdictions* by suit on the judgment . . . ." SPA § 8.10 (emphasis added). Additionally, Section 1.5(e)(ii) likewise provides a specific carve-out to the general forum selection provision in Section 8.10, permitting "judgment [to] be entered upon such determination of the Arbiter *in any court* having jurisdiction over any Party *in order to enforce* such determination." *Id.* § 1.5(e)(ii) (emphasis added); *see, e.g.*, *S'holder Representative Servs. LLC v. Somalogic, Inc.*, 2026 WL 160718, at *5 n.10 (Del. Ch. Jan. 21, 2026) ("Specific language in a contract controls over general

15

language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." (quoting *DCV Hldgs.*, 889 A.2d at 961)); *Walker v. FRP Invs. GP, LLC*, 336 A.3d 542, 562 (Del. Ch. 2025) (same); *Schulz Gp. GmbH v. Jamestown Premier Prop. Fund*, 2025 WL 1695819, at *5 n.56 (Del. Ch. June 17, 2025) (same); *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 62 (Del. 2019) (explaining that a general provision of a contract "must [] be interpreted in light of . . . a more narrowly drafted provision").

It is clear from the plain language of the SPA that Hackman was permitted to file the Enforcement Action in Mississippi Federal Court to enforce the Arbiter's award. Although WWEC argues that an action to "enforce" an arbitration award[6] cannot determine whether the award is "enforceable," the SPA does not distinguish between an action to "enforce" an Arbiter's award and an action to determine the enforceability of the award. That is because to enforce an award, a court must determine its enforceability. A reviewing court will enforce an award unless grounds exist to vacate it, "such as where the award was procured by fraud, where the arbitrators were clearly guilty of misconduct, or where the arbitrators exceeded their powers in granting the award or so imperfectly executed their powers that a

---

[6] The parties disagree on whether the Arbiter is an "arbitrator" or an "expert." AB at 13 ("The Arbiter is not an arbitrator."); RB at 2 ("WWEC wrongfully contends the Arbiter functions as an expert rather than an arbitrator."). Because the distinction does not change the jurisdictional analysis here, I need not decide the issue.

16

definite award was not made." *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *11 (Del. Ch. Aug. 9, 2012), *aff'd*, 72 A.3d 78 (Del. 2013).[7]

The first-filed Enforcement Action involves the same parties and issues, and WWEC has not argued that the Mississippi Federal Court is incapable of doing prompt and complete justice. Accordingly, Counts I and II are dismissed without prejudice in deference to the Enforcement Action.

## B. The Motion To Dismiss Counts III And IV Is Denied.

Counts III and IV of the Amended Complaint seek declaratory judgments that Hackman "has no legally valid or viable" claim for fraud or negligent misrepresentation against WWEC. Am. Compl. ¶¶ 78–91. Hackman argues that the Court should dismiss Counts III and IV in deference to his prior-filed Fraud Action or, alternatively, for failure to state a claim.

---

[7] *See, e.g.*, *AM Buyer LLC v. Argosy Inv. P'rs IV, L.P.*, 2024 WL 4024980, at *1 (Del. Super. Ct. Sep. 3, 2024) (enforcing an award after determining that an independent accountant did not "exceed the scope of its authority" or commit "manifest error"), *aff'd*, 345 A.3d 958 (Del. 2025) (TABLE); *see also, e.g.*, *Serrala Americas, Inc. v. Current Lighting Sols., LLC*, 2025 WL 658759, at *5 (Del. Ch. Feb. 28, 2025) (ORDER) (enforcing an arbitrator's award after the plaintiff failed to demonstrate that "the arbitrator exceeded his powers or acted in manifest disregard of Delaware law"); *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Secs., Inc.*, 953 A.2d 726, 738 (Del. Ch. 2008) (enforcing an arbitration award with modifications after determining that the arbitration panel did not act in manifest disregard of clear law); *Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 50–51 (Del. Ch. 2005) (vacating rather than enforcing an arbitration award "in a case where the arbitration panel's decision [wa]s so gravely erroneous under a clear statutory mandate as to preclude enforcement"); *Malekzadeh v. Wyshock*, 611 A.2d 18, 23 (Del. Ch. 1992) (enforcing an award where the "[a]rbitrators did not exceed their authority").

17

Hackman's argument that the Court should dismiss Counts III and IV in deference to his prior-filed Fraud Action fails under the SPA's broad forum selection provision. As noted above, when parties have contractually agreed to litigate disputes in a particular forum, the Court will honor their contract. *Ingres Corp.*, 8 A.3d at 1145. Though Hackman filed the Fraud Action in Mississippi Federal Court, Section 8.10 of the SPA unambiguously requires that "[a]ny suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby shall be brought exclusively in the Delaware Court of Chancery" or another Delaware court. SPA § 8.10. Hackman's fraud claim— alleging WWEC made misstatements about how employee raises and customer orders would be calculated for purposes of the earnout—"aris[es] out of or relat[es] to" the SPA and the transaction contemplated therein. *See Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1226 (Del. Ch. 2001) (explaining that "claims 'arising out of' the [a]greement[] would seem to cover direct claims for breach of the [a]greement or fraud in the inducement"), *rev'd on other grounds*, 817 A.2d 149 (Del. 2002); *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *2–4 (Del. Ch. Mar. 23, 2021) (finding that an action alleging fraudulent inducement to enter an agreement was a "suit, action or other proceeding arising out of" that agreement); *Pearce v. NeueHealth, Inc.*, 2024 WL 3421900, at *10–11 (Del. Super. Ct. July 15, 2024) (finding that fraud claims "ar[o]se out of the SPA[]" because "[b]ut for the

execution of the SPA[], [p]laintiffs could not make those critical allegations"); *GPV I FIZAN v. Surgalign Hldgs., Inc.*, 2023 WL 1796293, at *6 (Del. Super. Ct. Feb. 7, 2023) (holding that "fraud claims arise out of or are in connection with the Share Purchase Agreement").

Nor do any narrow exceptions within Sections 8.10 or 1.5(e)(ii) encompass claims for fraud. Hackman argues halfheartedly that because his fraud claim concerns the earnout procedures, Section 1.5(e)(ii) permits him to file outside of Delaware. *See* RB at 16–17, 20–21. But the carve-out in Section 1.5(e)(ii) is narrow—it applies only when an Arbiter renders a decision on a dispute in connection with the Earnout Payment Statement, in which case "judgment may be entered upon such determination of the Arbiter in any court having jurisdiction over any Party in order *to enforce such determination*." SPA § 1.5(e)(ii) (emphasis added). Because the Fraud Action is not an action to enforce the Arbiter's award, Section 1.5(e)(ii) does not apply.

Because the SPA requires that claims for fraud arising out of the SPA must be brought exclusively in the Court of Chancery, the Court will not dismiss Counts III and IV in deference to the Fraud Action in Mississippi Federal Court.

Hackman separately argues that Counts II and IV fail to state a claim upon which relief may be granted. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true,

19

(2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

Counts III and IV seek declaratory judgements pursuant to the Declaratory Judgment Act. "Under the Delaware Declaratory Judgment Act, Delaware courts 'have power to declare rights, status and other legal relations whether or not further relief is or could be claimed[.]'" *In re Aerojet Rocketdyne Hldgs., Inc.*, 2022 WL 2180240, at *10 (Del. Ch. June 16, 2022) (quoting 10 *Del. C.* § 6501). "There must be an actual controversy present for the [C]ourt to exercise declaratory judgment jurisdiction." *Cardinale v. Feingold*, 2023 WL 142510, at *2 (Del. Ch. Jan. 10, 2023). For an actual controversy to exist,

> (1) [i]t must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479–80 (Del. 1989)). "A dispute is ripe if 'litigation sooner or later appears to be unavoidable' and 'the

material facts are static.'" *ATP II GP, Ltd. v. Rigmora Biotech Inv. One LP*, 2025 WL 3496987, at *31 (Del. Ch. Dec. 5, 2025) (quoting *XL Specialty*, 93 A.3d at 1217). "Ultimately, Delaware's approach to declaratory relief and ripeness leaves the determination to the discretion of the court." *Id.*

Hackman argues that Counts III and IV must be dismissed as unripe because "there is no factual situation giving rise to immediate, or about to become immediate, controversy between the parties." OB at 34. WWEC seeks declaratory judgments that Hackman "has no legally valid or viable" negligent misrepresentation or fraud claims—essentially the mirror-image of the claims Hackman has already asserted, albeit in another court in contravention of Section 8.10. Hackman's prior filing demonstrates that the dispute has "matured to a point at which judicial action is appropriate." *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).

The Motion to Dismiss Counts III and IV is therefore denied.

### C.     The Motion To Dismiss Count V Is Denied In Part And Granted In Part.

Count V of the Amended Complaint alleges that Hackman breached Section 8.10 of the SPA by filing the Enforcement Action and the Fraud Action. Am. Compl. ¶¶ 92–102.

To the extent Count V is premised on the Enforcement Action, the Motion to Dismiss is granted. As explained above, Section 1.5(e)(ii) of the SPA permits

21

"judgment [to] be entered upon such determination of the Arbiter *in any court* having jurisdiction over any Party in order to enforce such determination." SPA § 1.5(e)(ii) (emphasis added). Based on the plain language of the SPA, Hackman was permitted to file the Enforcement Action in Mississippi Federal Court to enforce the Arbiter's award. *See supra* pp. 16–17. The Amended Complaint therefore fails to state a claim for breach of the SPA premised on the Enforcement Action.

To the extent Count V is premised on the Fraud Action, the Motion to Dismiss is denied. As detailed above, Section 8.10 requires that "[a]ny suit, action or other proceeding arising out of or relating to [the SPA] or any transaction contemplated hereby shall be brought exclusively in the Delaware Court of Chancery" or another Delaware court. SPA § 8.10. The Fraud Action arises out of or relates to the SPA and the transaction contemplated thereunder; no other exceptions to the forum selection provision in Sections 8.10 or 1.5(e)(ii) apply; and the plain language of the SPA therefore requires that action be brought in a Delaware court. *See supra* pp. 18–19. The Amended Complaint states a claim for breach of the SPA premised on Hackman filing the Fraud Action in Mississippi Federal Court.[8]

---

[8] Hackman also moves to dismiss for lack of personal jurisdiction. Section 8.10, which (as explained above) requires Hackman's fraud claim be filed in this Court, also states that "each of the Parties hereto hereby irrevocably submits to the exclusive jurisdiction of such courts for the purpose of any such suit, action or other proceeding." SPA § 8.10. The Motion to Dismiss for lack of personal jurisdiction is therefore denied.

**D.  The Court Has Equitable Subject Matter Jurisdiction.**

Hackman separately argues that the Court lacks equitable subject matter jurisdiction over this action.  "The Court of Chancery is a court of limited jurisdiction." *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017).  This Court "maintains subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'" *Smith v. Scott*, 2021 WL 1592463, at *14 (Del. Ch. Apr. 23, 2021) (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 249 A.3d 375 (Del. 2021) (TABLE)).

The Court has equitable subject matter jurisdiction over this action because WWEC's pleadings seek equitable relief, including an order enjoining Hackman from prosecuting the Enforcement Action and the Fraud Action in violation of Section 8.10 of the SPA.  Am. Compl. at 31.  To be clear, WWEC has not moved for preliminary injunctive relief in connection with the present motion, but this request in the pleadings supports the Court's exercise of subject matter jurisdiction over the action.

23

## III. CONCLUSION

For the reasons explained above, the Motion to Dismiss is granted in part and denied in part. The Motion to Dismiss Counts I and II is granted; those counts are dismissed in favor of the Enforcement Action. The Motion to Dismiss Counts III and IV is denied. Count V is dismissed to the extent it is premised on the Enforcement Action and sustained to the extent it is premised on the Fraud Action.